**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        jglatt@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (*pro hac vice* forthcoming)
Benjamin Rozenshteyn (*pro hac vice* forthcoming)
140 Broadway, FL 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com
E-Mail: ben@gr-firm.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAMEA BROUSSARD, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br>v.<br><br>SAM'S WEST, INC.,<br><br>                              Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Shamea Broussard ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Sam's West, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of herself and all similarly situated consumers who purchased Member's Mark Diced Peaches in 100% Fruit Juice fruit cups ("Diced Peaches"), Member's Mark Mandarin Oranges 4 oz., 24 ct. ("24 Ct. Mandarin Oranges"), and Member's Mark Mandarin Oranges, 15 oz., 10 pk. ("10 pk. Mandarin Oranges") (collectively, "fruit cups" or "Products").

2. Defendant markets the Products as being comprised of exclusively "100% fruit juice" and free of any artificial flavors or colors. However, unbeknownst to reasonable consumers, both the Diced Peaches and 24 Ct. Mandarin Oranges contain synthetic additives: ascorbic acid and citric acid, while the 10 Pk. Mandarin Orange contains citric acid. In each event, the inclusion of either ascorbic acid and/or citric acid, two synthetic preservatives, renders Defendant's on-label claims that the Products are comprised of 100% juice and free of artificial flavors and preservatives false and misleading.

3. Accordingly, Plaintiff brings claims against Defendant for violations of (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (3) Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; and (4) Breach of Express Warranty.

## PARTIES

4. Plaintiff Shamea Broussard is a citizen of California residing in Pleasant Hill, California. Plaintiff purchased Defendant's Products for her personal use on or about August 2023 from a Sam's Club store in Concord, California. Prior to making her purchase, Plaintiff Broussard saw and relied on Defendant's on-label representations that the Products were made from, and

contained in, "100% fruit juice" and free of artificial flavoring and coloring.  Plaintiff Broussard saw these representations and warranties prior to and at the time of her purchase.  Thus, Plaintiff reasonably relied on Defendant's representations when she decided to purchase the Products.  Accordingly, these representations and warranties were part of the basis of her bargain, in that Plaintiff Broussard would not have purchased the Products on the same terms had she known that these representations and warranties were untrue.  Furthermore, in making her purchases, Plaintiff Broussard paid a price premium due to Defendant's false and misleading claims regarding the Product's purported fruit juice content.  Plaintiff, however, did not receive the benefit of the bargain because the Products did not, in fact, contain exclusively 100% juice, but rather contained, in addition, two synthetic preservatives: ascorbic acid and citric acid.  Had Plaintiff known that Defendant's representations and warranties about the Products were false and misleading, Plaintiff would not have purchased the Products or would have paid substantially less for them.

5. Defendant Sam's West, Inc. is an Arkansas Corporation with its principal place of business in Bentonville, Arkansas.  Defendant manufactures, markets, and sells the Products throughout California and the United States.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000.00 exclusive of interest and costs, and Plaintiff, as well as most members of the proposed Classes, are citizens of states different from Defendant.

7. This Court has personal jurisdiction over Defendant because it conducts and transacts business in the State of California, including this District, thereby purposefully availing itself to the benefits of the forum.  Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District, including Plaintiff's purchasing the Product in this District.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place in this District.

# FACTUAL ALLEGATIONS

**A.     Consumers' Juice and Natural Flavor Preferences**

9.      "Clean label claims resonate for purchasers of … juices and include natural, no artificial flavors, and no artificial colors."[1]  In fact, at least one survey found that "Americans are paying more attention to ingredient lists, choosing clean ingredients and avoiding chemical sounding ingredients" while "[a]bout half of Americans say they seek out natural flavors at least some of the time [and] artificial flavors, colors, sweeteners and preservatives were sought out by only about one in 10 consumers, with approximately half saying they avoid each of them at least some of the time."[2]  On that note, a 2023 study of consumer perceptions and preferences found that products "Labeled as Having No Artificial Ingredients/Colors" was the second highest scoring indicator of food safety according to respondents.[3]

10.     Knowing this, producers, like Defendant, aim to capitalize on market preferences by labeling its Products as being contained in "100% Juice" and affirmatively disclaiming any presence of artificial, synthetic additives.  Unfortunately for consumers, Defendant's marketing and labeling practices are precisely what consumers are seeking to avoid: pure juice representations made clearly and conspicuously on the front of its labels while inconspicuously disclosing contradictory ingredient information on the other side of the packaging.

**B.     Citric Acid and Ascorbic Acid and Mislabeling**

*i.      Citric Acid*

11.     Citric acid "is one of the most common additives in food and beverage products across the world."[4]  Although citric acid is naturally occurring, in 2021, commercial, global

---

[1] Innova Market Insights, *Food Trends: US Consumer Preferences* (May 14, 2024) *available* https://www.innovamarketinsights.com/trends/food-trends/ (last accessed July 10, 2024).

[2] Food Insight, *IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients* (June 17, 2021) *available* https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/ (last accessed July 10, 2024).

[3] International Food Information Counsel, *2023 Food and Health Survey*, (May 23, 2023) *available* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://foodinsight.org/wp-content/uploads/2023/05/IFIC-2023-Food-Health-Report.pdf at 73 (last accessed July 10, 2024).

[4] Env't Protection Agency, *Citric Acid Supply Chain – Executive Summary*, available chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.epa.gov/system/files/documents/2023-03/Citric%20Acid%20Supply%20Chain%20Profile.pdf (last accessed July 11, 2024).

production of the additive was estimated to be about 736,000 tons per year.[5] As explained by drink brand Drink Sound, "[a] vast majority of the citric acid that [consumers] see in packaged foods … is not from citrus fruit but instead manufactured in bulk."[6] Accordingly, "it is not the naturally occurring citric acid, but the *manufactured* citric acid [] that is used extensively as a food and beverage additive."[7] In fact, "over 90% of the world's citric acid production is manufactured using three methods: Submerged fermentation (SF), liquid surface fermentation (LSF), and solid-state fermentation (SSF)."[8]

> ii.   *Ascorbic Acid*

12. "Ascorbic acid is a human-made isolate used in myriad processed supplements that was created to cost-effectively mimic and replace naturally occurring vitamin C found in natural food. It's often derived from GMO corn starch, GMO corn sugar or rice starch."[9] For that reason, ascorbic acid is referred to as "synthetic vitamin C."[10] Although ascorbic acid can be naturally occurring and mimics vitamin C's chemical structure, its "reactive nature makes isolation of the substance from natural sources challenging, which has resulted in all commercial ascorbic acid

---

[5] Bikash Chandra Behera, et al., *Microbial Citric Acid: Production, Properties, Application, and Future Perspectives*, (Feb. 1, 2021) *available* https://onlinelibrary.wiley.com/doi/10.1002/fft2.66 (last accessed July 11, 2024).

[6] Drink Sound, *Citric Acid: Why Is It In Everything?* available https://drinksound.com/blogs/sip-on/citric-acid-why-is-it-in-everything (last accessed July 11, 2024).

[7] Illiana E. Sweis & Bryan C. Cressey, *Potential Role of the Common Food Additive Manufactured Citric Acid in Eliciting Significant Inflammatory Reactions Contributing to Serious Disease States: A Series of Four Case Reports*, 5 Toxicology Rep. (2018) 808-812, *available* doi: 10.1016/j.toxrep.2018.08.002 (last accessed July 11, 2024).

[8] Ewelina Ksiazek et al, *Citric Acid: Properties, Microbial Production, and Applications in Industries*, 29(1) Molecules (Jan. 2024) *available* doi: 10.3390/molecules29010022 (last accessed July 11, 2024).

[9] Smidge Blog, *Why Real Food Vitamin C is better Than Ascorbic Acid – And How To Tell The Difference*, (June 1, 2021), *available* https://www.getsmidge.com/blogs/news/vitamin-c-versus-ascorbic-acid (last accessed July 16, 2024).

[10] Mount Sinai, *Vitamin C (Ascorbic Acid)*, available https://www.mountsinai.org/health-library/supplement/vitamin-c-ascorbic-acid (last accessed July 16, 2024).

being synthetically produced."[11]  To that end, ascorbic acid is used primarily as an antioxidant that helps prevent microbial growth and oxidation in food products.

13. Accordingly, the U.S. F.D.A. considers both ascorbic acid and citric acid as food additives.[12]

14. In fact, just like Defendant's misbranded product here, in 2015, the U.S. F.D.A. informed fruit product producer Chiquita Bananas that its Pineapple Bites and Pineapple Bites with Coconut products were "misbranding with the meaning of section 403(k) of [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail[ed] to declare these preservatives with a description of their functions."[13]

C. **Defendant's Representations and Warranties**

15. Defendant's label affirmatively represents to consumers that its Diced Peaches are "in 100% fruit juice" and free of any artificial colors or flavors.



---

[11] National Organic Program, *Ascorbic Acid – Technical Evaluation Report*, U.S. Dep't of Agriculture (July 17, 2019) *available* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf (last accessed July 16, 2024).

[12] U.S. Food & Drug Admin., *Food Additive Status List*, (last accessed July 16, 2024), *available* https://www.fda.gov/food/food-additives-petitions/food-additive-status-list.

[13] David Bellm, *Food Packaging: FDA Says Chiquita Labels Are Misleading*, Packing Digest (Mar. 11, 2015) *available* https://www.packagingdigest.com/trends-issues/food-packaging-fda-says-chiquita-labels-are-misleading (last accessed July 16, 2024).

16. However, despite these representations and warranties, the Product contains ascorbic acid and citric acid.



17. Defendant's Mandarin Oranges 100% Juice fruit cups make nearly identical representations despite containing ascorbic and citric acid.



18. Finally, Defendant's Mandarin Oranges 15 ounce can, 10 packs make the same representations and warranties while containing citric acid:



19. Unfortunately for consumers like Plaintiff, despite the front labels of each Product prominently and affirmatively representing that the Products are comprised of 100% juice and free of artificial colors and/or flavors, the ingredient panels of the packing, in small print, reveal the presence of ascorbic and citric acid, two synthetic additives.

20. By labeling the Products as containing "100% Juice" and/or "100% Fruit Juice," and free from artificial coloring and/or flavoring, Defendant deliberately attempts to distinguish itself from other fruit cups available on the market that contain additional synthetic ingredients or preservatives. As discussed above, however, Defendant's Products are not contained in "100% Juice" or "100% Fruit Juice" that is artificial coloring and/or flavoring free since they contain ascorbic acid and citric acid—two well-known synthetic non-juice additives.

## CLASS ALLEGATIONS

21. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Federal Rules of Civil Procedure 12(a), (b)(1), (b)(2), and (b)(3) defined as ("collectively, the "Classes"):

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for consumption. (the "Class").
>
> **California Subclass:** All persons in California who, during the maximum period of time permitted by the law, purchased Defendant's Products primarily for consumption (the "California Subclass")

22. The Classes do not include (1) Defendant, its officers, and/or directors; (2) the Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiff's counsel and Defendant's counsel.

23. Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

24. ***Community of Interest:*** There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

25. ***Numerosity:*** While the exact number of members of the Classes is unknown to Plaintiff at this time, and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

26. ***Existence and Predominance of Common Questions of Law and Fact:*** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

> (a) Whether Defendant's Products were comprised exclusively of 100% fruit juice;

(b) Whether Defendant's Products contained synthetic additives contrary to a reasonable consumer's understanding of Defendant's label claims;

(c) Whether reasonable consumers would understand Defendant's representations and warranties concerning its juice content was untrue and misleading;

(d) Whether Defendant's representations and warranties were material;

(e) Whether Defendant was unjustly enriched as a result of its unlawful conduct alleged in this Complaint.

27. With respect to the California Subclass, additional questions of law and fact common to the members include whether Defendant violated California's Consumers Legal Remedies Act, ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

28. ***Typicality:*** The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading advertising about the fruit juice composition of its Product, purchased the deceptive Products in reliance on those representations and warranties, and suffered a loss as a result of those purchases.

29. ***Adequacy:*** Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Classes because she has no interests adverse to the interest of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel.

30. ***Superiority:*** A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek redress their claims other than through the procedure of a class action. In addition, even if Class Members could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying,

inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presented fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with California's consumer protection laws. If separate actions were brought by individual members of the Classes, Defendant could be subject to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I
### Violation of California's Consumer's Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*
### (On Behalf of Plaintiff and the California Subclass)

31. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

32. Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

33. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

34. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

35. Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

36. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers by advertising that the Product contained exclusively 100% juice even though it contains synthetic preservatives.

37. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

38. On November 13, 2023, prior to filing this action, Plaintiff sent a pre-suit notice letter pursuant to CLRA § 1782. The letter was sent certified mail, return receipt requested, and provided notice of Defendant's violation of the CLRA and demands that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged herein. Defendant failed to remedy the issues raised in the letter.

39. Plaintiff and the California Subclass seek actual and punitive damages, restitution, reasonable costs and attorneys' fees, and to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

**COUNT II**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On behalf of the Plaintiff and California Subclass)**

40. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

41. Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

42. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

43. Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct. Specifically, Plaintiff purchased the Product for her own personal use. In so doing, Plaintiff relied upon Defendant's false representations that the Product was comprised of exclusively "100% fruit juice" when the Product actually contained synthetic preservatives. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

44. The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any

act." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

45. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq*.

46. Defendant violated the UCL's proscription against engaging in **Unlawful Business Practices** through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.* and CLRA, Cal. Civ. Code § 1770(a)(5) and (a)(7) as alleged above.

47. Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices**. Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Defendant's deceptive "100% fruit juice" representations have misled consumers into purchasing the Products over other truthfully labeled competitors.

48. Plaintiff and the Classes suffered substantial injury by virtue of buying the Product that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the inclusion of citric acid and ascorbic acid, two synthetic additives.

49. There is no benefit to consumers or competition from deceptively marketing that the Products are comprised of 100% juice when they are not.

50. The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason therefore, particularly considering the available legal

alternatives which exist in the marketplace. Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the Classes.

51. Plaintiff and the Classes could not have reasonably avoided their injury or known that the Product's prominent, front-label marketing was in fact inaccurate and contradicted by Defendant's back-label, fine-print disclosures. As such, they could not have reasonably avoided the injury they suffered.

52. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to (a) provide restitution to Plaintiff and the other members of the Subclass; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's attorneys' fees and costs.

### COUNT III
### Violation of California's False Advertising Law
### Cal. Bus. & Prof. Code § 17500
### (On Behalf of the California Subclass)

53. Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

54. Plaintiff brings this claim on behalf of herself and the California Subclass against Defendant.

55. Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the California Subclass and public. As described throughout this Complaint, Defendant misrepresents that the Products are comprised of 100% Juice and free of synthetic additives when they contain ascorbic and citric acid, two synthetic additives.

56. By Defendant's actions, they have disseminated uniform advertising regarding the Products across California and the U.S. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*. Such advertisements were intended to, and likely did, deceive the consuming public.

57. The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant affirmatively represented that the Products are comprised of 100% juice and free of artificial additives when they are not.

58. In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue and misleading in violation of California law. Plaintiff and the members of the California Subclass based their purchasing decisions on Defendant's material false and misleading representations and warranties about the composition of its Products. Plaintiff and the California Subclass were injured in fact and lost money and property as a result, in an amount to be proven at trial.

59. The misrepresentations by Defendant of the material facts described and detailed above herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

60. Accordingly, Plaintiff and the California Subclass seek all monetary and non-monetary relief allowed by law, including (a) restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; (b) declaratory relief; (c) reasonable attorneys' fees and costs under Cal. Code Civ. Proc. §1021.5; and (d) injunctive relief, and other appropriate equitable relief.

### COUNT IV
### Breach of Express Warranty
### (On Behalf of a Nationwide Class)

61. Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

62. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

63. Plaintiff brings this claim under the laws of the State of California.

64. Plaintiff and the Nationwide Class Members formed a contract with Defendant at the time Plaintiff and the Nationwide Class Members purchased the Products.

65. The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging that they were comprised of 100% juice and free from artificial ingredients.

66. This labeling and advertising constitute express warranties and became part of the basis of the bargain and part of the standardized contract between Plaintiff and the Nationwide Class and Defendant.

67. As set forth above, Defendant purports through its labeling, marketing, and packaging, to create an express warrant that the fruit is kept in 100% juice and free of artificial additives. However, Defendant breached its express warranties about the Product by including ascorbic and citric acid, two artificial, synthetic additives, thereby rending the prominent "100% Juice" and artificial-free representations and warranties false. Simply, the Products do not conform to Defendant's representations and warranties.

68. Plaintiff and the Nationwide Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

69. Plaintiff and the members of the Nationwide Class would not have purchased the Products had they known the true nature of the Product.

70. As a result of Defendant's breach of express warranty, Plaintiff and each member of the Nationwide Class suffered financial damage and injury as a result and are entitled to all damages, in addition to costs, interest and fee, including attorneys' fees, as allowed by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant as follows:

a) For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes, and Plaintiff's Counsel as Class Counsel;

b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e) For prejudgment interest on all amounts awarded;

f) For an order of restitution and all other forms of equitable monetary relief;

g) For injunctive relief as pleaded or as the Court may deem proper;

h) For an order awarding Plaintiff and the Classes' their reasonable attorneys' fees and expenses and costs of suit.

# JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: July 30, 2024      **BURSOR & FISHER, P.A**.

By: ___/s/ L. Timothy Fisher___
      L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
      jglatt@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (*pro hac vice* forthcoming)
Benjamin Rozenshteyn (*pro hac vice* forthcoming)
140 Broadway, FL 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com
E-Mail: ben@gr-firm.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration**

I, L. Timothy Fisher, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff. Plaintiff Broussard resides in Pleasant Hill, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in this Complaint occurred in the Northern District of California as Plaintiff Broussard purchased the Product in Concord, California. Additionally, Defendant sold, marketed, and distributed the Products at issue to Class Members in this District.

3. I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California this July 30, 2024.

                                                        */s/ L. Timothy Fisher*
                                                        L. Timothy Fisher